**FEDERAL DEPOSIT INSURANCE COR-PORATION, a corporation organized under the laws of the United States of America, Plaintiff,**

v.

**Lawrence GATES, et al., Defendants.**

**Civ. A. No. 83–2223.**

United States District Court, D. Kansas.

Feb. 28, 1984.

On Motion for Reconsideration April 17, 1984.

Brian E. Gardner, Morrison, Hecker, Curtis, Kuder & Parrish, Shawnee Mission, Kan., Theresa L.F. Levings, John C. Cozad, Morrison, Hecker, Curtis, Kuder & Parrish, Kansas City, Mo., for plaintiff.

Dennis M. Clyde, Gates & Clyde, Overland Park, Kan., for defendants.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on the motion of the defendants Lawrence C. and Jeanne K. Gates to dismiss, and on plaintiff's motion for summary judgment on defendants' counterclaim. The court has reviewed the extensive materials before it and has determined that oral argument would not be of material assistance in this matter. Rule 15(d), Rules of Practice of the United States District Court for the District of Kansas.

This is an action by the Federal Deposit Insurance Corporation [hereinafter FDIC], acting in its corporate capacity as purchaser of the assets of the Mission State Bank and Trust Company, to collect on certain promissory notes executed by the Gates defendants to the Mission State Bank.

The defendants' motion to dismiss asserts the following arguments: (1) a lack of subject matter jurisdiction in this court under 12 U.S.C. § 1819; (2) express federal and state statutory provisions vest jurisdiction in the Kansas state courts; (3) that plaintiff has improperly pleaded jurisdiction; and (4) that plaintiff has failed to state a cause of action. For the reasons set forth below, defendants' motion to dismiss must be denied.

■■■ In considering a motion to dismiss, the factual allegations of the complaint must be taken as true and all reasonable inferences must be indulged in favor of plaintiffs. *Mitchell v. King*, 537 F.2d 385 (10th Cir.1976); *Dewell v. Lawson*, 489 F.2d 877 (10th Cir.1974). A complaint should not be dismissed unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). The question is not whether the plaintiffs will ultimately prevail, but whether they are entitled to offer evidence to support their claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

Defendants' first contention is that jurisdiction is not properly in this court. Plaintiff asserts jurisdiction under 12 U.S.C. § 1819, which, in pertinent part, grants to the FDIC the power:

Fourth. To sue and be sued, complain and defend, in any court of law or equity, State or Federal. All suits of a *civil nature* at *common law* or *in equity* to which the Corporation shall be made a party shall be deemed to arise under the laws of the United States, and the United States district courts shall have original jurisdiction thereof, without regard to the amount in controversy; . . . (Emphasis added.)

■■■ Defendants contend that this statute does not grant this court jurisdiction because plaintiff's action to enforce this promissory note is neither at common law nor in equity, but instead arises out of the statutory provisions of the Kansas Consumer Credit Code [hereinafter KCCC] and the Uniform Commercial Code [hereinafter UCC]. Defendants argue that "common law" should be understood as contrasted with "statutory law."

The court finds that defendants' proposed reading of the statute would nullify the intent of Congress to grant the federal courts jurisdiction over civil actions brought by and against the FDIC. This court does not believe the statute was intended to grant the states the authority to remove jurisdiction from the federal courts merely by codifying a traditional common law cause of action into statutory form. That an action on a promissory note may be controlled in whole or in part by state statutory law does not affect this court's jurisdiction under 12 U.S.C. § 1819.

In *Weems v. McCloud*, 619 F.2d 1081 (5th Cir.1980), the court had to determine whether it was bound by state law characterizations of a confirmation proceeding which indicated that such actions were neither at "common law" nor "in equity." The court held that it was not bound by such state law characterizations:

[W]e must look to federal court decisions to find the appropriate standard to determine whether a Georgia confirmation is a "suit of a civil nature at common law or equity." Not surprisingly, since § 1819 is concerned with the relatively limited realm of litigation involving the FDIC, there are no cases interpreting this phrase as it occurs in the statute. However, the predecessors to the present removal statute contained the phrase, "any suit of a civil nature, at law or in equity . . . ," which was given extensive interpretation by the federal courts. We turn to these cases for aid.

It is clear that the fact that a confirmation proceeding has peculiar procedural rules and serves a specialized function does not preclude it from being a "suit at common law or in equity" for federal jurisdictional purposes. *In re Silvies River*, 199 F. 495, 501 (D.C.Or.1912), remarked:

"The phrase 'suits at common law and in equity' embraces not only ordinary actions and suits, but includes all the proceedings carried on in the ordinary law and equity tribunals as distinguished from proceedings in military, admiralty, and ecclesiastical courts. It is a very comprehensive term, and is understood to apply to any proceedings in a court of justice by which an individual pursues a remedy which the law affords.... And the state cannot, by creating special proceedings or special tribunals, deprive the federal court of jurisdiction of such a suit or prevent a removal. *In re The Jarnecke Ditch* (C.C.), 69 Fed. 161."

*Id.* at 1087–88.

■ Under this analysis, the grant of jurisdiction in 12 U.S.C. § 1819 to civil actions at common law and in equity embraces the cause of action alleged herein. The court believes this is the appropriate analysis. See also *F.D.I.C. v. New London Enterprises, Ltd.,* 619 F.2d 1099 (5th Cir. 1980). This court finds that 12 U.S.C. § 1819 was intended to grant to the federal courts jurisdiction over all civil actions to which the FDIC might be a party in its corporate capacity and which are cognizable in the ordinary law and equity tribunals of the states.

As to defendants' argument that plaintiff has inadequately pleaded jurisdiction in this matter under Rule 8(a), Federal Rules of Civil Procedure, this court finds that plaintiff has adequately set forth a jurisdictional statement in its complaint and that defendants' contention is without merit.

■ Defendants further contend that 12 U.S.C. § 1823(d) vests exclusive jurisdiction of this action in state courts, a notion which this court finds to be absolutely without merit. Section 1823 is not written to confer or deny jurisdiction on the federal courts; § 1819 fits that purpose. Instead, § 1823(d) simply holds that when state-insured banks become insolvent they may offer their assets for sale to the FDIC in accordance with state law. There is no problem with such a procedure in this case.

Finally, the court finds that plaintiff has sufficiently stated a cause of action and defendants' arguments to the contrary are without merit.

■ The court shall now consider plaintiff's motion for summary judgment on defendants' counterclaim. In order to rule favorably on a motion for summary judgment, the court must determine that the matters considered in connection with the motion disclose "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56, Federal Rules of Civil Procedure. The principal inquiry is therefore whether a genuine issue of material fact exists. *Dalke v. The Upjohn Co.,* 555 F.2d 245 (9th Cir.1977); *Hanke v. Global Van Lines, Inc.,* 533 F.2d 396 (8th Cir. 1976). A motion under Rule 56 will be denied unless the movant demonstrates beyond a reasonable doubt that he is entitled to a favorable ruling. *Madison v. Deseret Livestock Co.,* 574 F.2d 1027 (10th Cir. 1978); *Mustang Fuel Corp. v. Youngstown Sheet & Tube Co.,* 516 F.2d 33 (10th Cir.1975). Pleadings and documentary evidence are to be considered liberally in favor of the party opposing a Rule 56 motion. *Harman v. Diversified Medical Investments Corp.,* 488 F.2d 111 (10th Cir.1973), *cert. denied* 425 U.S. 951, 96 S.Ct. 1727, 48 L.Ed. 195 (1976).

Defendants have responded to plaintiff's motion for summary judgment on defendants' counterclaim with arguments on the merits, and defendants have also requested that this court's decision be postponed until the completion of further discovery. This court finds that no material facts are in dispute with respect to defendants' counterclaim. Thus, a decision by this court on this issue is not premature. Having reviewed the extensive briefs filed by counsel, this court is now prepared to rule.

The defendants' counterclaim for judgment against the plaintiff declaring the loans herein void, for a reasonable allowance of attorneys' fees, for costs, for One Thousand Dollars ($1,000) each pursuant to

K.S.A. 16a–5–201(4), for return of all sums paid by defendants to plaintiff, and for an order directing plaintiff to release mortgages and security interests on defendants' property.

The theory under which defendants proceed is that the loans herein were subject to the provisions of the Kansas Consumer Credit Code, § 16a–2–301, which provides that one shall not take assignment of and undertake direct collection of payments from or enforcement of rights against debtors from supervised loans unless properly licensed. The statute provides for certain exceptions to this rule. The remedy of a consumer against a creditor who violates this statute is the declaration that the loan is void and that the consumer is not obligated to pay either the amount financed or the finance charge. K.S.A. 16a–5–201(2). Defendants contend that plaintiff FDIC violated the statute in that it took assignment and undertook collection of payments and enforcement of rights against defendants arising from supervised loans without obtaining a license from the Kansas Consumer Credit Commissioner.

The court finds, viewing the facts in the light most favorable to the defendants, that their counterclaim cannot stand. The court finds the material facts with respect to defendants' counterclaim to be uncontroverted and those uncontroverted material facts can be stated as follows:

(1) The Gates defendants executed the notes and mortgages which are the subject of this lawsuit.

(2) The Gates defendants hold legal title to the property subject to the mortgages herein.

(3) The notes and mortgages herein were made to and in favor of the Mission State Bank and Trust Company.

(4) On August 8, 1980, the FDIC was appointed receiver for the Mission State Bank and Trust Company.

(5) On March 25, 1981, FDIC, as receiver, sold and assigned to FDIC, in its corporate capacity, the notes and mortgages in question.

(6) The Gates defendants have not paid the principal amounts appearing on the face of the notes in question.

(7) The FDIC has neither sought nor obtained any license from the Kansas Consumer Credit Commissioner under the provisions of the KCCC.

(8) The notes conspicuously and clearly contain the following language: "I/we agree to the terms of this promissory note, disclosure statement and security agreement, ... and further agree that the loan shall be subject to Sections 1–131 of the Kansas Uniform Consumer Credit Code."

The ultimate questions before this court are whether the licensing provisions of the KCCC apply to the FDIC and, if so, whether the KCCC has been violated. This court finds that the KCCC does not require the licensing of the FDIC before it may undertake the collection of loans which it has purchased under its federal statutory authority. Second, this court finds that even if the KCCC did apply, an appropriate reading of this statute would find that the FDIC is a "supervised financial organization" within the meaning of § 16a–1–301(37), and thus would not be subject to the licensing provision of the KCCC.

The KCCC was enacted by the Kansas Legislature in 1973. The purposes and policies of the Act are set forth at K.S.A. 16a–1–102(2) as follows:

(a) To simplify, clarify and modernize the law governing retail installment sales, consumer credit, consumer loans, and usury;

(b) to provide rate ceilings to assure an adequate supply of credit to consumers;

(c) to further consumer understanding of the terms of credit transactions and to foster competition among supplies of consumer credit so that consumers may obtain credit at reasonable cost;

(d) to protect consumer buyers, lessees, and borrowers against unfair practices by some suppliers of consumer credit, having due regard for the inter-

ests of legitimate and scrupulous creditors;

(e) to permit and encourage the development of fair and economically sound consumer credit practices; and

(f) to make uniform the law, including administrative rules, among the various jurisdictions.

In interpreting the statutory provisions of the KCCC, it is important to keep in mind the purposes and policies underlying the code. With respect to the facts of this case, the KCCC on its face does not address the application of its licensing provisions to the FDIC. A relevant provision, K.S.A. 16a–2–301, states as follows:

Unless a person is a supervised financial organization; or is an agricultural credit corporation organized under the laws of the United States or the state of Kansas; or has first obtained a license from the administrator authorizing such person to make supervised loans, such person shall not engage in the business of

(1) making supervised loans; or

(2) taking assignments of and undertaking direct collection of payments from or enforcement of rights against debtors arising from supervised loans, but such person may collect and enforce for three months without a license if the person promptly applies for a license and such person's application has not been denied. Nothing in this section shall be construed to require the licensing of an attorney who is forwarded contracts for collection.

Kansas Comment 1 to this section makes clear that supervised financial organizations, because they are already supervised by a state or federal agency, are not required to be licensed. One of those supervising agencies is the FDIC. It would be ridiculous for this court to assume that Kansas would exempt from licensing banks subject to FDIC supervision in the making and collection of loans, but would require licensing of the FDIC when it undertakes the collection on loans purchased as a result of a failure of a bank.

Such an interpretation of the KCCC would be far removed from the underlying purposes and policies of the KCCC. It would do absolutely nothing to prevent unfair debt collection practices, but would serve only as a convenient way for borrowers to avoid payment of valid loans obtained from failed banks.

Further, this court will not impute to the Kansas Legislature an intent to violate the United States Constitution.

In the alternative, the court would hold that even if the provisions of K.S.A. 16a–2–301 would be otherwise applicable to the FDIC under the facts of this case, the FDIC would be entitled to exemption from the licensing requirements of the statute. Earlier in this opinion, this court stated that supervised financial organizations under K.S.A. 16a–1–301(37) are not required to be licensed and that the FDIC is a supervising agency which qualifies a bank under its supervision for supervised financial organization status. This court believes that the definition of a supervised financial organization ought not be read so narrowly as to find that supervised banks need not be licensed but the supervision in performing the same activities must be. Therefore, even if the KCCC applied to the FDIC, the exemption from licensing afforded to supervised financial organizations is broad enough to embrace the FDIC.

IT IS BY THE COURT THEREFORE ORDERED that defendants' motion to dismiss is hereby denied. IT IS FURTHER ORDERED that plaintiff's motion for summary judgment on defendants' counterclaim is hereby granted.

## ON MOTION FOR RECONSIDERATION

This matter is before the court on the defendants' motion for reconsideration and/or for relief from the court's order dated February 28, 1984. Having reviewed the court's earlier order and the arguments of counsel in the submitted briefs, the court finds that defendants' motion should be denied.

In its February 28th order, the court found that K.S.A. 16a–2–301, the licensing

provision of the Kansas Consumer Credit Code, does not require the licensing of the Federal Deposit Insurance Corporation [hereinafter FDIC] before it may undertake the collection of loans which it has purchased in its corporate capacity. The court concluded that the licensing provision is not intended to reach and does not reach the FDIC in its corporate capacity. Licensing of the FDIC is not required by the statute and such licensing would not further the purposes of the statute. Further, such licensing would run afoul of Article VI of the United States Constitution, and the court refused to impute to the Kansas Legislature an intent to violate the Kansas Constitution. In the alternative, the court stated that even if the provisions of K.S.A. 16a–2–301 were otherwise applicable, the FDIC should be found to be a supervised financial organization not subject to the licensing provisions of the statute.

The court will now address the arguments raised by defendants on their motion.

## I. *FDIC's Role*

The relevant statute, K.S.A. 16a–2–301, subjects certain persons and organizations to licensing before making supervised loans or taking assignments and undertaking direct collection of supervised loans. In its order, the court took note that supervised financial organizations, because they are already supervised by a state or federal agency, are not required to be licensed. The court then recognized that the FDIC has supervisory power over some supervised financial organizations and that it would be ridiculous for the legislature to require a supervising agency to be licensed when the supervised financial organizations under its supervision are not.

Defendants argue that the FDIC does not supervise Kansas banks in the making and collection of loans and that therefore the conclusion of the court is erroneous. Direct supervision of Kansas banks is provided by the Kansas Banking Commissioner. K.S.A. 16a–6–104(2)(b). But the fact that the Kansas Banking Commissioner

has supervisory power, at least in some matters, is not in any sense conclusive of the issue before this court. The FDIC is granted numerous supervisory powers over state- and federally-chartered banks, and these powers are more than sufficient to support the holding of the court. These powers include the following:

(a) 12 U.S.C. 1819, Tenth, empowering the FDIC to adopt regulations to carry out the provisions of the Federal Deposit Insurance Act;

(b) 12 U.S.C. 1820(b), empowering the FDIC to perform examinations of (1) insured state non-member banks; (2) insured state branches of foreign banks; (3) and others;

(c) 12 U.S.C. 1828(c), empowering the FDIC to regulate many bank mergers;

(d) 12 U.S.C. 1828(d), (1) empowering the FDIC to control the opening and moving of branches by certain banks and the moving of the main offices of certain banks;

(e) 12 U.S.C. 1828(f), empowering the FDIC to publish reports of its examinations in cases where a bank refuses to comply with FDIC recommendations;

(f) 12 U.S.C. 1828(g)(1) empowering the FDIC to prescribe rules regarding the payment and advertisement of rates of interests by insured non-member banks;

(g) 12 U.S.C. 1828(i)(1), empowering the FDIC to regulate reduction or retirement of bank stock by certain banks; and

(h) 12 U.S.C. 1828(j)(3), empowering the FDIC to penalize non-member insured banks which violate the Federal Deposit Insurance Act regarding loans between affiliate banks or between banks and bank owners and officers.

The defendants have cited to this court a February 9, 1984, opinion of the Attorney General of the State of Kansas that the FDIC does not qualify as a supervised lender or supervised financial organization under the code, an issue which will be addressed *infra*. The Attorney General's opinion is cited by the court at this point for its conclusion with regard to the super-

visory powers of the FDIC. The Attorney General stated, "The FDIC does not make loans or receive deposits, and, instead of being 'subject to supervision' by an agency of the federal government, is in fact an agency which does the supervising, at least in some matters. 12 U.S.C.A. § 1828 *et seq.*" Slip Op. at 3.

Therefore, the court once again reiterates that an interpretation of the KCCC which would subject the FDIC to licensing provisions would be ridiculous in light of the supervisory powers of the FDIC, would be far removed from the underlying purposes and policies of the KCCC, and would do nothing to prevent unfair debt collections. It would serve only as a convenient way for borrowers to avoid payment of valid loans obtained from failed banks, a purpose not at all intended by the legislature.

## II. *The Constitutional Issue*

This court held in its earlier order that it "will not impute to the Kansas Legislature an intent to violate the United States Constitution." The supremacy clause of Article VI of the United States Constitution states as follows: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

██ Congress created the FDIC and empowered the FDIC to take assignment of the assets of insolvent banks. It is the opinion of this court that if Kansas would require the licensing of the FDIC before the FDIC could exercise its powers granted under the federal law, the state law would violate the constitution. See *McCulloch v. Maryland,* 4 Wheat. 316, 4 L.Ed. 579 (1819). This court presumes the Kansas Legislature was well aware of the supremacy clause in enacting the KCCC, and that the legislature did not intend to violate

that clause. The court should not and will not impute to the legislature such an intent, and the language of the KCCC does not require such a reading.

## III. *Statutory Construction*

The court in its earlier order, and again in this order, makes reference to the intent of the legislature and the purposes and policies of the KCCC in determining that the licensing provisions of the KCCC do not apply to the FDIC. The defendants contend that the intent or purpose of the statute should not be considered by this court because the statute is plain and unambiguous. The court disagrees. The statute does not contemplate the situation before this court. The statute does direct that it shall be "liberally construed and applied to promote its underlying purposes and policies." K.S.A. 16a–1–102(1). By looking to its underlying purposes and policies to determine the applicability of the statute to the facts of this case, the court was merely following the direct provisions of the statute.

## IV. *Alternative Holding*

This court does not believe the licensing provision of the KCCC applies to the FDIC for the reasons set forth above. However, and as an alternative holding, the court in its earlier order found that if the licensing provision would otherwise apply, the court would interpret the statute to include the FDIC as a "supervised financial organization," meaning the FDIC would not have to be licensed. The court's holding is based on the fact that the FDIC has supervisory powers over supervised financial organizations, and thus should be entitled to some of their same protections under the statute. Defendants cite to this court an opinion of the Kansas Attorney General which indicates that in his opinion the FDIC is not a supervised financial organization under the statute. It should be noted that in the Attorney General's opinion, the FDIC (in its capacity as receiver on the facts before the Attorney General) is not subject to the licensing requirements of the KCCC, a con-

clusion with which this court agrees. Insofar as the Attorney General stated that the FDIC could not be a supervised financial organization because the FDIC is engaged in the business of insurance, this court finds the business of the FDIC extends into many areas beyond insurance, and the court, on that limited issue, does not consider itself bound by the Attorney General's opinion.

IT IS BY THE COURT THEREFORE ORDERED that defendants' motion for reconsideration and/or for relief from the court's order of February 28, 1984, is hereby denied.