**FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff,**

v.

**Kenneth P. SODEN, et al., Defendants.**

**James L. EISENBRANDT, et al., Plaintiffs,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, et al., Defendants.**

**Kenneth P. SODEN and William O. Isenhour, Jr., Plaintiffs,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, Defendant.**

Civ. A. Nos. 83-2354, 84-2080 and 84-2081.

United States District Court, D. Kansas.

Oct. 19, 1984.

Brian E. Gardner, A. Bradley Bodamer, Morrison, Hecker, Curtis, Kuder & Parrish, Overland Park, Kan., Martin J. Purcell, John C. Cozad, Stanley A. Reigel, Morrison, Hecker, Curtis, Kuder & Parrish, Kansas City, Mo., for F.D.I.C.

Thomas A. Hamill, Hamill, Neill & Dwyer, Mission, Kan., Richard T. Merker, Rudolf H. Beese, Wallace, Saunders, Austin, Brown & Enochs, Dennis M. Clyde, Gates & Clyde, Overland Park, Kan., for Soden, Eisenbrandt and Isenhour.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

These cases, all arising out of the failure of the Mission State Bank and Trust Company, are hereby consolidated by this court on the motion of the Federal Deposit Insur-

ance Corporation [hereinafter FDIC]. There are numerous motions pending. The court has determined that oral argument would not be of material assistance. Rule 15(d), Rules of Practice of the United States District Court for the District of Kansas.

## I. *FDIC As Defendant*

The court will first consider the motions of the FDIC, in its corporate capacity, to dismiss in Case Nos. 84–2080 and 84–2081. FDIC is the defendant in both cases.

In *Eisenbrandt v. F.D.I.C.,* plaintiffs James L. Eisenbrandt and Louise Eisenbrandt have sued the FDIC, both in its capacity as receiver and in its corporate capacity, for treble damages, pursuant to 12 U.S.C. § 1971, *et seq.* In *Kenneth P. Soden and William O. Isenhour v. F.D.I.C.,* the defendant FDIC is sued only in its corporate capacity. The FDIC, in its corporate capacity only, has moved to dismiss these actions.

In considering a motion to dismiss under Rule 12(b)(6), Federal Rules of Civil Procedure [hereinafter F.R.C.P.], the factual allegations of a complaint must be taken as true and all reasonable inferences must be indulged in favor of the plaintiff. *Mitchell v. King,* 537 F.2d 385 (10th Cir.1976); *Dewell v. Lawson,* 489 F.2d 877 (10th Cir. 1974). A complaint should not be dismissed unless it appears beyond a doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). In this case, the court has considered the complaint of the Eisenbrandt plaintiffs and the amended complaint of the Soden plaintiffs, as well as the briefs of the plaintiffs in support of their claims. It appears to the court "beyond doubt" that plaintiffs can prove no set of facts entitling them to affirmative relief from the FDIC in its corporate capacity.

The facts, as viewed in the light most favorable to the plaintiffs, indicate that the FDIC prior to February of 1980 had identified the Mission State Bank and Trust Company as a problem bank. Plaintiffs allege that the FDIC became actively involved in the day-to-day operations of the bank, and exceeded the normal actions of a regulatory agency. Plaintiffs allege that the actions were taken by the FDIC in its corporate capacity with its own best interests in mind.

On Tuesday, February 26, 1980, a law partnership note, No. 9516, in the amount of Six Thousand Dollars ($6,000), plus accrued interest, was due to the bank. Plaintiff James L. Eisenbrandt and plaintiffs Soden and Isenhour were members of the law partnership. The law partnership requested from the bank that the note be renewed and that the partnership be granted an additional Ten Thousand Dollars ($10,000) for payroll and operating expenses.

At the same time, a certain note of the KJW Development Company, No. 3100, was past due in the amount of One Thousand One Hundred Fifty-Nine and 32/100 Dollars ($1,159.32), plus accrued interest. According to plaintiffs, the past due status of this note was merely a technicality, because of a remaining Two Hundred Thirty-Eight Thousand Four Hundred Eighty Dollars ($238,480) balance available for draw on a wrap-around mortgage of certain property in Corbin, Kentucky. Plaintiffs were involved in the KJW Development Company.

On Tuesday, February 26, 1980, or Wednesday, February 27, 1980, bank officials met with members of the law partnership to discuss the execution of certain guaranty agreements in favor of the bank. These guaranty agreements allegedly were requested by the FDIC in part to shore up the FDIC's exposure in the event of the bank's insolvency. Following discussion, the partners determined that they would not sign the requested personal guaranties. They expressed this decision to the bank officials and further stated that the partnership would seek the necessary financing at another bank. Thereafter, the partners were advised by the bank that if the guaranty agreement was not signed, all loans of

KJW Development, Tri-State Road Boring Company, the law partnership, the building partnership, and each of the individual partners would be immediately due and payable, essentially accelerating the due date on all unrelated indebtedness, totaling well in excess of One Million Dollars ($1,000,000).

Plaintiffs allege they will show that this action was taken at the direction of, and on behalf of, the FDIC in a manner clearly directed at using its economic power to force plaintiffs, as customers, to provide personal guaranties in order to obtain the product or service they desired, in direct violation of federal statute. The Soden plaintiffs also allege that the bank, together with the FDIC, conditioned the extension of credit upon the plaintiffs not obtaining credit from any competitor of the bank.

The Bank Holding Company Act, 12 U.S.C. § 1971, *et seq.*, prohibits banks from entering into certain tying arrangements. The relevant statute, 12 U.S.C. § 1972, states, in pertinent part:

> (1) A bank shall not in any manner extend credit, lease or sell property of any kind, or furnish any service, or fix or vary the consideration for any of the foregoing, on the condition or requirement—
>
>   *    *    *    *    *    *
>
> (C) that the customer provide some additional credit, property, or service to such bank, other than those related to and usually provided in connection with a loan, discount, deposit, or trust service;
>
>   *    *    *    *    *    *
>
> (E) that the customer shall not obtain some other credit, property, or service from a competitor of such bank, a bank holding company, of such bank, or any subsidiary of such bank holding company, other than a condition or requirement that such bank shall reasonably impose in a credit transaction to assure the soundness of the credit.

Defendant FDIC, in its corporate capacity, claims that plaintiffs' complaints fail for four independent reasons. First, the bank tying statute, on its face, is not applicable to the FDIC. Second, the actions alleged to have been taken are no more than the regulatory actions the FDIC is empowered to take by its authorizing statute, 12 U.S.C. § 1811, *et seq.* Third, plaintiffs' actions are barred by the Federal Tort Claims Act, 28 U.S.C. § 2679(a), which expressly bars suits such as this against federal agencies for the allegedly wrongful discretionary acts or omissions of their employees. Finally, the FDIC alleges that even if the bank were still in operation and these suits were brought only against the bank, the complaints would fail to state a claim for relief in that the actions alleged amount to no more than requiring additional security for an existing loan before making additional loans, and such actions are entirely consistent with ordinary and customary banking practices and reflect prudence rather than anti-competitive intent.

■ The court need not reach all of the issues posed by plaintiffs' claims. The court finds as a matter of law that plaintiffs have failed to state a claim for which relief can be granted under the Bank Holding Company Act. The relevant provision, 12 U.S.C. § 1972(1) states that a "bank" shall not in any manner extend credit on the basis of certain prohibited conditions. The question before the court is whether 12 U.S.C. § 1972(1) subjects the FDIC in its corporate capacity to treble damage liability for violation of its provisions. Plaintiffs contend that the FDIC may be held liable in that the FDIC had the right to make loans and accept deposits of public monies, and therefore the FDIC may be considered a "bank" under the Act. See 12 U.S.C. § 1841(c). Plaintiffs offer as an exhibit the FDIC's admission in a related case, which states as follows:

> [FDIC] ... may make loans under certain specific conditions. [FDIC] is also authorized by virtue of 12 U.S.C. 1823(b), by the Congress of the United States, to accept deposits of public moneys (sic)

except by receipts from customs, in the event that it is designated a depository by the Secretary of the Treasury. While it has not been so designated by the Secretary of the Treasury, [FDIC] ... claims that the language of 12 U.S.C. 1823(b) is sufficient authorization to bring it within the definition of a supervised financial organization found in K.S. A.1982 Supp. 16a-1-301(37).

*FDIC v. Thompson*, No. 114797 (D. Johnson Co., Ks., 1983). (Amended answer to request for admissions.)

Under 12 U.S.C. § 1841(c), a "bank" is an institution which "(1) accepts deposits that the depositor has a legal right to withdraw on demand, and (2) engages in the business of making commercial loans." The court finds that FDIC does not fall within this definition of a bank in that it does not accept deposits payable upon demand; in other words, the FDIC does not offer checking accounts. While the FDIC admittedly has authority under 12 U.S.C. § 1823(b) to accept deposits of public monies when so designated by the Secretary of Treasury, such deposits are not sufficient to make the FDIC a bank under the Bank Holding Company Act. The legislative history of that Act indicates that the statute excludes institutions which do not accept checking accounts.

> ... the bill redefines "bank" as an institution that accepts deposits payable on demand (checking accounts), the commonly accepted test of whether an institution is a commercial bank so as to exclude institutions like industrial banks and non-deposit trust companies.

1966 *U.S.Code Cong. & Adm.News*, 2391.

By definition, therefore, the FDIC, in its corporate capacity, is not an institution subject to liability under the Bank Holding Company Act. The court finds that the FDIC is not a bank subject to regulation under the Act, but rather is a regulatory agency of the federal government with regulatory powers under the Act. 12 U.S.C. § 1972(2)(F)(vi). In its corporate capacity, the FDIC cannot be held liable under 12

U.S.C. § 1972 as alleged by plaintiffs herein.

## II. *Counterclaims Against FDIC*

The court shall now consider the counterclaims raised by defendants James L. Eisenbrandt and Louise Eisenbrandt, and Kenneth P. Soden and William O. Isenhour, Jr., in Case No. 83-2354 brought by the FDIC against these parties. In their counterclaims herein, the Eisenbrandts, Soden and Isenhour assert against the FDIC various claims under the Bank Holding Company Act, 12 U.S.C. § 1971, *et seq.*, which prohibits banks from entering into certain tying arrangements. These are the same claims as asserted by the Eisenbrandts, Soden and Isenhour in Cases No. 84-2080 and 84-2081 above. The court therefore finds that the counterclaims stated in Case No. 83-2354 by the Eisenbrandts, Soden and Isenhour do not state a claim upon which relief can be granted. Further, in that the FDIC is suing solely in its corporate capacity in Case No. 83-2354, the counterclaims of these defendants are dismissed in their entirety.

■ Also before the court is the motion of plaintiff FDIC to dismiss the counterclaim of defendants Lawrence C. and Jeanne K. Gates in Case No. 83-2354. The Gates defendants have filed a counterclaim against the FDIC generally alleging that the FDIC failed to comply with certain provisions of the Kansas Consumer Credit Code [hereinafter KCCC], K.S.A. 16a-1-101, *et seq.* Defendants allege the FDIC has never obtained a license from the State of Kansas to make or take assignments of supervised loans in Kansas. K.S.A. 16a-2-301. Defendants allege that the FDIC's failure to obtain such a license voids the promissory notes herein and entitles the defendants to a statutory penalty. These same arguments were previously dealt with by order of this court in *FDIC v. Gates*, 594 F.Supp. 36 (D.Kan.1984), *reconsideration denied* (D.Kan. 4/17/84). There, this court held that K.S.A. 16a-2-301, the licensing provision of the KCCC, does not require the licensing of the FDIC

before it undertakes a collection of loans which it purchases in its corporate capacity. The court hereby adopts the reasons set forth in *FDIC v. Gates* and holds that the defendants have not stated a counterclaim under the KCCC.

Also before the court is the motion of the FDIC in Case No. 83–2354, to dismiss the counterclaim of defendant Soden & Isenhour, a general partnership (hereinafter referred to as the law firm). The law firm seeks judgment voiding two promissory notes, for Fifteen Thousand Two Hundred Eleven and 16/100 Dollars ($15,211.16), plus interest, for civil penalties and reasonable attorneys' fees. The law firm's arguments are based on two theories. First, the firm contends that the FDIC has failed to comply with certain provisions of the KCCC. K.S.A. 16a–1–101, *et seq.* This argument has been dealt with in *FDIC v. Gates, supra;* therefore, the counterclaim of Soden & Isenhour under the KCCC must be dismissed. Second, the firm alleges that there was an agreement between the law firm and Theodore Meyer, President of Mission State Bank and Trust Company, that the indebtedness on the two notes [for Sixty-Eight Thousand Dollars ($68,000) and Six Thousand Dollars ($6,000)] would be paid from the contingent fees of the firm and its predecessors and from fees for services rendered by it and its predecessors to Gary L. Frazier and various corporations with which Gary L. Frazier was connected. The law firm alleges that Meyer requested the firm to represent Frazier, and Meyer guaranteed the payment of Fifty-Five Thousand Six Hundred Ninety-Five and 61/100 Dollars ($55,695.61). The law firm alleges that this money and guaranty has never been collected by it or its predecessors and that the Mission State Bank and Trust Company failed to pay. The law firm alleges that Meyer at all times pertinent hereto controlled the funds of Frazier and his corporations, and that the FDIC acknowledged and acquiesced in the agreement that said indebtedness would be paid from the contingent fees.

The FDIC contends that *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), and 12 U.S.C. § 1823(e) protect the FDIC from secret side agreements which are not reflected in the records of a failed bank. The relevant statute, 12 U.S.C. § 1823(e), states:

> No agreement which tends to diminish or defeat the right, title or interest of the Corporation in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the Corporation unless such agreement (1) shall be in writing, (2) shall have been executed by the bank and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank, (3) shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) shall have been, continuously, from the time of its execution, an official record of the bank.

It is clear that the alleged side agreement entered into between the bank and the law firm did not comply with § 1823(e) in that no allegation has been made that such agreement was in writing or was approved by the board of directors or the bank or was in any aspect reflected in an official record of the bank. While the law firm alleges that the FDIC was aware of the agreement, the court finds that such knowledge by the FDIC is irrelevant. In *FDIC v. de Jesus Velez*, 678 F.2d 371, 375 (1st Cir.1982), the court stated:

> Section 1823(e) is explicit in its requirements for the validity of collateral agreements. Knowledge by the FDIC and some sort of constructive knowledge of the bank directors are not relevant. The agreements do not meet the § 1823(e) requirements, and therefore the agreements are invalid.

■ The court finds that for the same reasons the collateral agreement here between the bank and the law firm is not relevant and the provisions of § 1823(e)

have not been complied with. Therefore, the counterclaim of the law firm against the FDIC must be dismissed.

### III. *Cross-claims*

Defendants Kenneth P. Soden, William O. Isenhour, Jr., and Soden & Isenhour, a general partnership, have moved to dismiss or strike the cross-claims of defendants James L. Eisenbrandt and Louise Eisenbrandt. The Eisenbrandt defendants served their answer and counterclaim to plaintiff's complaint by mail on May 29, 1984. Thereafter, on July 19, 1984, the Eisenbrandt defendants served, without leave of court, a cross-claim on defendants Soden, Isenhour and the law partnership (hereinafter referred to as the Soden defendants). The Soden defendants claim that the cross-claim filed by the Eisenbrandts is an improper pleading in that it was not served with the answer and that it was untimely in that it was not filed within twenty (20) days after the service of summons and complaint. Rule 12(a), Federal Rules of Civil Procedure.

Rule 7(a), F.R.C.P., states:

There shall be a complaint and an answer; a reply to a counterclaim denominated as such; *an answer to a cross-claim, if the answer contains a cross-claim;* a third-party complaint, if a person who was not an original party is summoned under the provisions of Rule 14; and the third-party answer, if a third-party complaint is served. *No other pleading shall be allowed,* except that the court may order a reply to an answer or a third-party answer. (Emphasis supplied.)

■ Consistent with the above language, a cross-claim must be properly contained in the answer. The Eisenbrandt defendants' answer did not contain a cross-claim, and leave of court was not obtained from the court to amend the answer. Rule 15, F.R.C.P., allows amendment by leave of the court, and commands that leave shall be freely given when justice so requires. The Eisenbrandt defendants have request-

ed leave to amend their answer to include a cross-claim in the event the court rules that the above cross-claim is not proper. The court finds that the Eisenbrandt defendants should be granted fifteen (15) days from the date of this order to amend their answer to include a cross-claim.

### IV. *Interpleader*

■ Defendant Soden & Isenhour, a general partnership, has moved for an order dismissing or setting aside the interpleader filed herein by Gates & Clyde, Chartered. The interpleader paid Two Thousand Eight Hundred Thirty-One and 20/100 Dollars ($2,831.20) into the court and was discharged from any liability to any conflicting claimants with regard to these funds. Defendant Soden & Isenhour filed its motions to dismiss and/or to set aside interpleader's payment of funds into the court on July 26 and July 31, 1984. No responsive brief has been filed by any of the parties. It appears from the briefs of the interpleader and defendant Soden & Isenhour that these funds were legal fees due and owing to Soden & Isenhour, a general partnership, for which FDIC has apparently made some sort of claim outside the records of this court. The court, without addressing the merits of which party is ultimately entitled these funds, finds, consistent with the motion of defendant Soden & Isenhour, that the holding of these funds by the court is improper. The court therefore finds that the interpleader should be set aside and the sums held by the registry of the court pursuant to the court's earlier order should be released to Soden & Isenhour, a general partnership, pending trial on the merits.

IT IS BY THE COURT THEREFORE ORDERED that Case Nos. 83–2354, 84–2080 and 84–2081 are hereby consolidated.

IT IS FURTHER ORDERED that the motions of defendant FDIC to dismiss the claims of the plaintiffs in Case Nos. 84–2080 and 84–2081 are hereby granted as to the FDIC in its corporate capacity. The

FDIC remains in Case No. 84–2080 in its capacity as receiver.

IT IS FURTHER ORDERED that the motion of plaintiff FDIC in Case No. 83–2354 to dismiss the counterclaims of James L. Eisenbrandt, Louise Eisenbrandt, Kenneth P. Soden and William O. Isenhour, Jr. is hereby granted.

IT IS FURTHER ORDERED that the motion of the FDIC to dismiss the counterclaim of Soden & Isenhour, a general partnership, is hereby granted.

IT IS FURTHER ORDERED that the motion of defendants Kenneth P. Soden, William O. Isenhour, Jr., and Soden & Isenhour, a general partnership, to dismiss or strike the cross-claims of defendants James L. Eisenbrandt and Louise Eisenbrandt is hereby granted. IT IS FURTHER ORDERED that defendants James L. Eisenbrandt and Louise Eisenbrandt are hereby granted leave to file, within fifteen (15) days from the date this order is filed, an amended answer including the cross-claims which have been heretofore struck by this order.

IT IS FURTHER ORDERED that the motions of defendant Soden & Isenhour, a general partnership, for an order dismissing or setting aside the interpleader filed herein by Gates & Clyde, Chartered, are hereby granted, and the Clerk of this Court is hereby ordered to release to Soden & Isenhour, a general partnership, any sums heretofore deposited with this court in this case by order dated July 18, 1984.