No. 59,546

EARL A. THOMPSON, LUCY THOMPSON, FREDERICK H. HARTWIG and
LOUISE HARTWIG, *Appellants*, v. FEDERAL DEPOSIT INSURANCE
CORPORATION, *Appellee*.

(736 P.2d 914)

Opinion filed May 1, 1987.

*William O. Isenhour, Jr.*, of Soden & Isenhour, P.A., of Mission, argued the cause, and *Kenneth P. Soden* and *John M. Cox*, of the same firm, were with him on the briefs for appellants.

*David L. Skidgel*, of McAnany, Van Cleave & Phillips, P.A., of Kansas City, argued the cause, and *Nancy S. Anstaett* and *Anton C. Andersen*, of the same firm, were with him on the brief for appellee.

The opinion of the court was delivered by

HERD, J.: Appellants Earl and Lucy Thompson and Frederick and Louise Hartwig appeal from the district court's grant of summary judgment in favor of appellee Federal Deposit Insurance Corporation (FDIC).

The facts are not in dispute. On August 8, 1980, the former Mission State Bank & Trust Company (Bank) was declared insolvent by the Kansas State Bank Commissioner and the FDIC was appointed as receiver. On that same day, the FDIC as receiver sold certain assets of the Bank to the FDIC in its corporate capacity.

The appellants had borrowed $1,050,000 from the Bank as evidenced by two identical promissory notes, each of which provided it was subject to the Kansas Uniform Consumer Credit Code (UCCC), K.S.A. 16a-1-101 *et seq.* The two promissory notes and security therefore were part of the assets of the Bank which the FDIC, as receiver, sold and assigned to FDIC in its corporate capacity. Appellants paid both notes in full, then filed a declaratory judgment action on January 9, 1984, alleging the FDIC had

violated the provisions of the UCCC by taking assignment of and undertaking direct collection of payments from or enforcement of rights against the appellants arising from supervised loans when the FDIC was neither a supervised lender nor an exempt organization as defined in the code. Appellants claimed the notes were void as a result of the alleged violations, and sought recovery of statutory penalties, attorney fees, and costs.

Appellants later amended their petition to claim in the alternative that the FDIC in its corporate capacity was not the owner of the promissory notes which are the basis of the action because it failed, in its capacity as receiver, to obtain the proper order from the Kansas State Bank Commissioner as required by 12 U.S.C. §§ 1821(e), 1823(d) (1982), and K.S.A. 9-1304 and K.S.A. 1986 Supp. 9-1906.

On April 1, 1985, the district court dismissed appellants' alternative cause of action finding appellants did not have standing to enforce the provisions of K.S.A. 9-1304 and 12 U.S.C. § 1823(d). On March 12, 1986, the trial court issued a second memorandum decision granting summary judgment to the FDIC, holding it was not required to comply with the licensing provisions of the UCCC. Appellants appeal.

The first issue is whether the supremacy clause of the United States Constitution prevents the State of Kansas from requiring the FDIC to acquire a license in order to carry out the duties assigned to it by Congress.

In 1981, when the FDIC as receiver sold appellants' notes to the FDIC in its corporate capacity, the UCCC provided the following requirements for making supervised loans:

"Unless a person is a *supervised financial organization;* or is an agricultural credit corporation organized under the laws of the United States or the state of Kansas; *or has first obtained a license from the administrator authorizing such person to make supervised loans,* such person shall not engage in the business of

"(1) making supervised loans; or

"(2) *taking assignments of and undertaking direct collection of payments from or enforcement of rights against debtors arising from supervised loans,* but such person may collect and enforce for three months without a license if the person promptly applies for a license and such person's application has not been denied. Nothing in this section shall be construed to require the licensing of an attorney who is forwarded contracts for collection." (Emphasis added.) K.S.A. 16a-2-301.

K.S.A. 16a-2-301 was amended in 1985 to provide as follows:

"Unless a person is a supervised financial organization; or is an agricultural credit corporation organized under the laws of the United States or the state of Kansas; or has first obtained a license from the administrator authorizing such person to make supervised loans; *or is the federal deposit insurance corporation acting in its corporate capacity or as receiver,* such person shall not engage in the business of

"(1) making supervised loans; or

"(2) taking assignments of and undertaking direct collection of payments from or enforcement of rights against debtors arising from supervised loans . . . ." (Emphasis added.) K.S.A. 1986 Supp. 16a-2-301.

While the current statute clearly exempts the FDIC from its licensing requirements, appellants argue the law in effect at the time of the transactions in question here required unsupervised lenders to obtain a license from the administrator before taking assignment of and undertaking direct collection of payments from or enforcement of rights against debtors arising from supervised loans. Appellants reason that FDIC did not have the authority to take assignment of their loans since FDIC was not (1) a supervised financial organization, or (2) an agricultural credit corporation; nor did the FDIC promptly (or at any time) apply for a license after undertaking the assignment and collection of the notes.

The FDIC contends, and the district court held, that the supremacy clause of the United States Constitution prohibits the state from requiring the FDIC to obtain a license under the UCCC.

The supremacy clause, Article 6 of the United States Constitution, provides in pertinent part:

"This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

The United States Supreme Court first interpreted the supremacy clause in *McCulloch v. Maryland,* 17 U.S. (4 Wheat.) 316, 4 L. Ed. 579 (1819). In *McCulloch,* the court was asked to determine the validity of an 1818 Maryland law which imposed a tax on "all Banks, or branches thereof, in the State of Maryland, not chartered by the legislature." 17 U.S. (4 Wheat.) at 317-18.

Congress had recently created a nationally chartered Bank of the United States and when McCulloch, the cashier of the Baltimore branch, refused to pay the tax, the State of Maryland filed suit to collect.

Chief Justice John Marshall, writing for a unanimous court in *McCulloch,* stated:

"If any one proposition could command the universal assent of mankind, we might expect it would be this—that the government of the Union, though limited in its powers, is supreme within its sphere of action. This would seem to result necessarily from its nature. It is the government of all; its powers are delegated by all; it represents all, and acts for all. Though any one State may be willing to control its operations, no State is willing to allow others to control them. The nation, on those subjects on which it can act, must necessarily bind its component parts. . . .

"The government of the United States, then, though limited in its powers, is supreme; and its laws, when made in pursuance of the constitution, form the supreme law of the land, 'anything in the constitution or laws of any State to the contrary notwithstanding.' " 17 U.S. (4 Wheat.) at 405-06.

The *McCulloch* court determined the Maryland law was unconstitutional and void and concluded:

"The Court has bestowed on this subject its most deliberate consideration. The result is a conviction that the States have no power, by taxation or otherwise, to retard, impede, burden, or in any manner control, the operations of the constitutional laws enacted by Congress to carry into execution the powers vested in the general government. This is, we think, the unavoidable consequence of that supremacy which the constitution has declared." 17 U.S. (4 Wheat.) at 436.

Professor Tribe, in his treatise on constitutional law, describes the rule of *McCulloch* as follows:

"*McCulloch* thus announced the prophylactic per se rule that has been followed ever since. If Congress does not authorize state taxation or regulation of federal instrumentalities, the possibility of interference with substantive federal policy is sufficient to raise a presumption of immunity." Tribe, American Constitutional Law § 6-28, p. 392 (1978).

Here, the possibility of state interference with substantive federal policy is clear. The FDIC, as receiver of a failed bank, typically employs a "purchase and assumption" transaction in which the FDIC arranges for another member bank to "purchase" the failed bank and reopen it without interruption of banking operations. Since the purchasing bank typically only purchases those assets it wishes to take over, FDIC in its cor-

porate capacity often purchases the remaining assets. Thus, the FDIC has been given authority under a comprehensive federal scheme of regulation to take assignment of and undertake direct collection of payments from debtors such as the appellants. A state licensing requirement such as that provided for in K.S.A. 1986 Supp. 16a-2-301 could interfere with that scheme since it would be up to the administrator whether or not to license or authorize the FDIC to conduct such transactions.

Though this issue has not been resolved by state appellate courts, it has been considered by the federal district court of Kansas.

In *Federal Deposit Ins. Corp. v. Gates*, 594 F. Supp. 36 (D. Kan. 1984), the FDIC in its corporate capacity as purchaser of assets of a state bank sued to collect on certain promissory notes executed by defendants to the bank. The defendants counterclaimed, contending the FDIC violated K.S.A. 16a-2-301 when it undertook collection of payments and enforcement of rights against defendants arising from supervised loans without obtaining a license from the Kansas Consumer Credit Commissioner. The federal district court, after setting out the relevant statutes and discussing the purposes and policies underlying the UCCC (see K.S.A. 16a-1-102[2]), stated:

"Kansas Comment 1 to this section [K.S.A. 16a-2-301] makes clear that supervised financial organizations, because they are already supervised by a state or federal agency, are not required to be licensed. One of those supervising agencies is the FDIC. It would be ridiculous for this court to assume that Kansas would exempt from licensing banks subject to FDIC supervision in the making and collection of loans, but would require licensing of the FDIC when it undertakes the collection on loans purchased as a result of a failure of a bank." 594 F. Supp. at 41.

On motion for reconsideration, the federal court also considered the constitutional issue now before this court and held that if Kansas were to require the licensing of the FDIC before the FDIC could exercise its powers granted under the federal law, the state law would violate the supremacy clause of the United States Constitution. 594 F. Supp. at 43.

We agree with the federal court and hold that *McCulloch* is controlling on the issue in this case. For Kansas to require the FDIC to obtain a license to do business in this state is violative

of the supremacy clause, Article 6 of the United States Constitution.

The legislature's 1985 amendment to K.S.A. 16a-2-301 is irrelevant and is merely recognition of the supremacy clause.

In light of our holding, it is unnecessary to address the other issue raised on appeal. The judgment is affirmed.